# EXHIBIT A

FORREST R. MILLER, ESQ, State Bar No. 319976
LAW OFFICES OF FORREST R. MILLER
9440 So. Santa Monica Blvd., Ste. 301
Beverly Hills California 90210
(310) 279-5151
forrestmiller@forrestmillerlaw.com

DONTE MILLS (*pro hac vice forthcoming*)
MILLS LEGAL
14 Penn Plaza, 21st Flr
New York, NY 10122

Attorneys for Plaintiff
Taylor M. Lefridge

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
11/7/2025 6:58:12 PM
Clerk of the Superior Court
By G. Escorcia, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| TAYLOR M. LEFRIDGE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BOBBY RAY SIMMONS, JR (aka B.O.B.), an individual; DEE, an individual; California Beer Festival, LLC dba CBF Productions; Marriott International, Inc. and DOES 1 through 100,<br><br>　　　　Defendants | Case No.: 25CU060348C<br><br>**COMPLAINT FOR DAMAGES:**<br>**(1) SEXUAL BATTERY (Civil Code Section 1708.5)**<br>**(2) BATTERY**<br>**(3) SEXUAL ASSAULT**<br>**(4) CIVIL CODE § 52.1 (BANE CIVIL RIGHTS ACT)**<br>**(5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**(6) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TAYLOR M. LEFRIDGE ("Plaintiff or Ms. Lefridge"), by and through her attorneys hereby alleges against Defendants BOBBY RAY SIMMONS, JR, (aka B.O.B.)) ("Mr. Simmons"), DEE ("Manager" and "Dee"), California Beer Festival, LLC dba CBF Productions ("CBF"), Marriott International, Inc. ("Marriott"); and DOE #1 (to be later named when identity is known) (collectively "Defendants") as follows:

///

///

# INTRODUCTION

1. Plaintiff is a young married mother who, in 2016, faced an unexpected cancer diagnosis. During the course of her grueling treatment, she found comfort and strength in the music of Defendant, Mr. Simmons, whose lyrics and artistry provided a much-needed emotional outlet and helped her cope with periods of severe depression and anxiety brought on by this life-threatening illness.

2. Mr. Simmons, known professionally as "B.o.B", is an American rapper, singer, songwriter, and record producer.

3. After enduring a long and emotionally exhausting treatment schedule, Ms. Lefridge received the encouraging diagnosis that she was finally cancer free. Since first being introduced to Mr. Simmons' music by her husband and listening to his music throughout her cancer recovery, Ms. Lefridge has remained an admirer of his music and lyrics and has felt a deep personal connection to him.

4. Around April 2025, Ms. Lefridge learned Mr. Simmons was scheduled to perform near San Diego, California. She decided to attend the event with her cousin, who lived close by and would be celebrating her birthday. For Ms. Lefridge, it was both an opportunity to spend time with family and to see the artist whose music supported her through emotionally difficult times.

5. Prior to April 2025, Mr. Simmons had been performing in various venues throughout the United States in preparation for his upcoming "Adventures of Bobby Ray 15th Anniversary Tour. These performances provided a testing ground for various song lists, musical arrangements and to develop audience participation segments to enhance their experience.

6. One of the crowd favorites used by Mr. Simmons and frequently incorporated into his performance was to bring on stage female audience members who would dance and perform a "twerking" competition to certain song selections. The twerking competition was becoming quite popular and widely known as part of Mr. Simmons' routine performance through social media posts.

7. Flying from her home in Texas, Ms. Lefridge planned to celebrate her cousin's birthday on April 26, 2025, and go out for a fun evening with her cousin and friends to a song and food festival at Del Mar Fairgrounds in San Diego County, California where Mr. Simmons was scheduled to perform at the "Tequila & Taco Music Festival." The festival was produced by defendant California Beer Festival, LLC dba CBF Productions, a reputable organization and one of California's largest traveling

festival production companies. The festival offered an array of food items, tequila-based drinks and a lineup of live music by popular musical performers.

8.  As part of the festival's planned entertainment defendant, Mr. Simmons performed before a live audience. Ms. Lefridge and her party paid the admittance fee and attended Mr. Simmons' performance where they danced and sang along with other attendees.

9.  Dancing to the Mr. Simoons' recognizable songs performed by Mr. Simmons reminded Ms. Lefridge of just how hard the past several months were while undergoing cancer treatment. She was now cancer free and able to be a mom and wife again without the looming threat of cancer complicating her life.

10. As part of his general performance routine, Mr. Simmons picked several females to come onstage and dance to his music and join in his routine group twerking performance to "Whistle While You Twurk" by the Ying Yang Twins. As luck would have it, Ms. Lefridge was one of the females invited onto the stage. She was naturally excited. While dancing onstage she was approached by Defendant Dee, Mr. Simmons' manager/assistant, who invited her to an "after party" with Mr. Simmons and his entourage at a local nightclub. Dee, a female, was quite friendly and disarming while at the same time strongly urging Ms. Lefridge to attend the party.

11. At no point from the time Ms. Lefridge entered the venue to the time she was asked to perform on stage with Mr. Simmons, was she approached by anyone from defendant CBF's staff and advised of any safety concerns or precautions she might take to ensure her safety and well-being while on stage or afterwards. She was not provided a waiver to sign advising her that she was assuming all risk of potential injury from performing with Mr. Simmons. She was also not advised by CBF of any known risk from joining Mr. Simmons' after concert festivities.

12. Ms. Lefridge viewed the unexpected invitation as a once-in-a-lifetime opportunity to hang out with one of the biggest stars in Hip Hop, whose music played a major role in keeping her emotionally healthy to continue her arduous struggle against cancer. Ms. Lefridge couldn't believe how her life had turned around since the cancer-free diagnosis. Moreover, she figured everything would be okay with her cousin by her side; after all Mr. Simmons' wife would be there also.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**
3

13. Ms. Lefridge and her party went to the nightclub where they met with Mr. Simmons and others of his group including Mr. Simmons' wife, Tiffany and Defendant Dee, his manager. Ms. Lefridge, her cousin and her friends danced and mingled with others at the nightclub. She was able to speak a bit with Mr. Simmons' wife. Everything was turning out great and the Simmons' group seemed to be having fun as a tight-knit family on the touring circuit.

14. While at the nightclub Ms. Lefridge was approached by DOE #1 from Mr. Simmons' entourage who invited her to another after-party event at Mr. Simmons' hotel suite at the Westin Hotel Gaslamp Quarter, located in San Diego. The hotel was owned by defendant, Marriott International, Inc. Out of caution borne from being a married mother, Ms. Lefridge accepted the invitation only if her cousin could accompany her. She was told that her cousin could accompany her to Mr. Simmons' suite.

15. After leaving the club, Defendant Dee texted Ms. Lefridge the address of the Westin Hotel and directed her to come immediately. She and her cousin arrived at the hotel at about 3am.

16. Despite arriving at the hotel at such a late hour, employees at the front desk failed to institute any security measures to ensure Ms. Lefridge and her cousin were secure in their person and free from potential violence and/or sexual assault. Employees knew that both of them were not staying at the hotel and were visiting the property at the invitation of Mr. Simmons who was hosting an after-hour party in the hotel's suite. Merriott Management and staff knew of Mr. Simmons and that he had just completed the day's Hip Hop festival engagement earlier in the evening.

17. Ms. Lefridge and her cousin were met in the lobby by Defendant Dee who quickly escorted them into the elevator and to the upstairs suite.

18. When they entered the suite, Ms. Lefridge noticed in attendance Mr. Simmons, his wife, Dee and several other people. Everything appeared casual and ordinary as an after-hour gathering at a celebrity's posh suite.

19. Once the party was underway, Ms. Lefridge was offered small multi-colored like "gummies" and was told they were marijuana. Ms. Lefridge refused, thinking they may contain something harsher.

20. Everything seemed normal and the event was just Ms. Lefridge hanging out with her idol and others. Things quickly changed, however, when her cousin went to the car to retrieve a jacket.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**
4

21. Once her cousin left the suite, Mr. Simmons began to aggressively grope Ms. Lefridge by trying to spread her legs open. He grabbed her neck and stated "what makes you think I won't kiss you right now". Mr. Simmons kept on saying that he only wanted to "eat her out" as he tried to pull her legs apart. She froze, not sure what was happening. She really couldn't move or step clear of him because he had her neck in a tight grip while she was sitting in a chair.

22. Without provocation, Mr. Simmons then escalated his assault. With his hand still tightly wrapped around her neck, he kneeled, resting on his knees and forcibly pulled Ms. Lefridge's chair closer to him. He then started rubbing both of his hands about her thighs and waist. Ms. Lefridge was shocked as she didn't think this could happen and didn't know what to do. This was coming from the man whose music helped her through her most desperate time; the Hip Hop artist whom she traveled from Texas to see; and now she is being sexually assaulted by the very same man.

23. Mr. Simmons' wife was present in the other room during the occurrence; she came into the room during the assault. For a brief moment, Ms. Lefridge felt relief that this uninvited sexual assault and nonconsensual intrusion onto her person was over and she could escape. But then, Mr. Simmons yelled some command to his wife and she quickly left the room without coming to Ms. Lefridge's aid or inquiring about what was happening. Fear again overtook Ms. Lefridge.

24. Mr. Simmons got up and walked to the doorway to ensure his wife had left the room and would no longer bother him or interrupt what he was planning to do. He quickly returned to his kneeling position before a seated Ms. Lefridge where he resumed rubbing her inner thighs and waist with intent to sexually assault her.

25. Hoping for her cousin to return, Ms. Lefridge got up to leave the penthouse through the kitchen. Mr. Simmons followed her, however, and kept her from leaving. No one was close by. She again sat on the chair when Mr. Simmons grabbed her by the neck and forcibly kissed her repeatedly.

26. Ms. Lefridge's cousin picked up her jacket rather quickly but was not allowed by defendant Merriott's employees at the front desk to return to the suite. The cousin explained to the Merriott employees that Ms. Lefridge was upstairs by herself and was being harassed by Mr. Simmons and that she needed to go up to the suite to make sure her cousin was safe. Employees of defendant Merriott refused to allow the cousin access to the elevator notwithstanding the cousin's claims that Ms. Lefridge

was in potential danger, and more importantly, notwithstanding the employees' knowledge of whom Mr. Simmons was and that he was hosting an after concert party. Ms. Lefridge was unaware her cousin was refused access to the elevator and prohibited from returning to the suite.

27. Merriott employees did not send someone to Mrs. Simmons' suite to investigate the cousin's claims or to ensure Ms. Lefridge was safe.

28. While upstairs, Mr. Simmons continued his sexually assault on Ms. Lefridge. He told Ms. Lefridge that "you're so fucking sexy!" He rushed over to her and lifted her blouse and started sucking on her breasts while grabbing at her vagina. She tried to push him off her but he was too strong and he continued to suck and kiss her breasts. At this point she started to cry and Mr. Simmons made some remark that her tears were pure.

29. Suddenly there was a knock on the door to which Mr. Simmons yelled, "who the fuck is that?" Defendant Dee, the manager, walked through the door. Seeing an opportunity, Ms. Lefridge quickly got up and escaped from the room and the manager escorted her to the ground floor where her cousin had been kept from coming up to the penthouse.

**PARTIES**

30. At all times relevant, Plaintiff Taylor Lefridge is a resident of Montgomery County, Texas. She was visiting family in the City of San Diego, San Diego County, California at the time of the subject incident.

31. At all times relevant, and on information and belief, Defendant Dee, was an employee of Co-Defendant BOBBY RAY SIMMONS, JR, (aka B.O.B.). Defendant Dee performed services while under the course and scope and employ with Mr. Simmons in the City of San Diego, County of San Deigo, California.

32. At all times relevant and on information and belief, Defendant BOBBY RAY SIMMONS, JR, resides in Atlanta Georgia. On the date of the subject incident, he entered into a written agreement with defendant California Beer Festival, LLC dba CBF Productions to perform songs from his music catalogue on a predetermined date and time in the County of San Diego, California.

33. At all times relevant and on information and belief, Defendant California Beer Festival, LLC dba CBF Productions is a California limited liability company with its principal place of business in

Oxnard, California. It conducts business throughout the state of California and was the production company which hired Mr. Simmons to perform and organized the festival in San Diego County where the subject incident occurred.

34. At all times relevant and on information and belief, Defendant Marriott International, Inc. is a Delaware corporation registered with the California Secretary of State to operate within California. Merriott International, Inc. owns the Westin Hotel Gaslamp Quarter in San Diego, California. Defendant Merriott International, Inc. conducts business throughout the state of California and specifically within the County of San Diego.

35. Each of Does 1 through 100, inclusive, is being sued under fictitious names. Plaintiff does not know the true names and capacities of Does 1 through 100, whether individual, corporate, associate, or otherwise. When their true names and capacities are known to Plaintiff, Plaintiff will seek to amend this complaint to identify them.

**JURISDICTION AND VENUE**

36. Jurisdiction is proper in this Court pursuant to California Code of Civil Procedure § 410.10 because Plaintiff's claim arises out of Defendants' wrongful actions in California, which caused damage to Plaintiff in California.

37. This Court has personal jurisdiction over defendants Bobby Ray Simmons, Jr, Dee, DOE #1 and Merriott International, Inc. because said defendants have sufficient minimum contacts with the State of California, having purposefully availed themselves of the California market by entering into written agreements to perform for consideration and contracting with California based business entities. The Plaintiff's claims arise out of or relate to these contacts, making the exercise of personal jurisdiction by this Court consistent with traditional notions of fair play and substantial justice.

38. This Court has subject matter jurisdiction over this action pursuant to California Constitution Article VI, section 10, as the amount in controversy exceeds $35,000.

39. Venue is proper under California Code of Civil Procedure § 395 because this action is based on conduct which took place within the City of San Diego, San Diego County, California.

///

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## GENERAL ALLEGATIONS

40. At the top of the **B.O.B.** power structure stands Mr. Simmons. All matters related to his image, performance and who is allowed into his inner circle come directly from him. In this instance, Mr. Simmons had Dee, his procurer and manager, with the help of DOE #1, seek out Ms. Lefridge and solicit her involvement in what would later devolve into Mr. Simmons' unconsented sexual assault on Ms. Lefridge. Dee and DOE #1 acted as Mr. Simmons' personal procurer.

41. With a primary objective in mind, both Dee and DOE #1 either acted on their own after learning the physical traits sought by Mr. Simmons from earlier trials or were personally directed by him on who to pick for after concert festivities. Irrespective of how they were directed to Ms. Lefridge, they were fully aware of Mr. Simmons' deviant intentions to gain sexual favors from Ms. Lefridge. The difference this time around was that Ms. Lefridge was not a voluntary participant in this sexual melodrama.

42. As a female, Dee presented with a demeanor less adversarial than how a male would be perceived, making acceptance of the invitation to female fans of Mr. Simmons more likely to occur. The authoritative manner in which Dee held herself and approached Ms. Lefridge created a degree of trust in Ms. Ledfridge and other unfortunate victims. Ms. Lefridge relied on what she thought was Dee's honesty and professionalism. If she were in danger, Dee would assuredly give her some kind of warning or would not have invited her. After all, the invitation was coming from a woman.

43. Dee and DOE #1 approached Ms. Lefridge with a well-rehearsed pitch; both Dee and DOE #1 were convincingly kind and yet direct. Yet despite knowing the dangers which lay before Ms. Lefridge, they continued with their directive without reservation or concern for her welfare while failing to warn or advise Ms. Lefridge of the probable outcome of the night instigated by Mr. Simmons' sexual proclivities.

44. Mr. Simmons and Dee, along with DOE #1, were the perfect team: the beguilers and the predator.

45. Additionally, as the company producing the event and hiring Mr. Simmons as the primary audience draw, Defendant CBF knew or should have known of Mr. Simmons' sexual proclivities as they were played out over social media without any filter. Mr. Simmons' well known ruse to get

females onto his stage and perform in a mock twerking competition was a time-tested charade played out for months through various social media platforms for all to see before he was hired by CBF. The disguised twerking competition was the item which was highly popular to likely attendees to the festival and was a draw for large crowds which translated into robust ticket sales.

46. Many people within the Hip Hop music circles of which Mr. Simmons was a part, were aware of the manner in which Mr. Simmons would vet out potential sexual marks with the use of on-stage invitations to enter into a twerking competition where the women would literally audition before him unaware of what they were actually getting themselves into.

47. As a result of Mr. Simmons' widely known conduct and the resultant sexual assaults on the unsuspecting female audience members, CBF was obligated to ensure that invited guests to the festival, who, for a monetary fee, came onto the property they managed and controlled, were to be free from a known dangerous condition or from a potentially dangerous condition.

48. Defendant CBF did not have guests of the festival sign liability waivers stating that invited paying guests assume the risk of entry onto the property.

49. In short, CBF knew or should have known the likelihood that women invited onto the stage by Mr. Simmons would be sexually assaulted by him but did nothing to warn them of the potential danger they would be facing at the hands of the celebrity, a known sexual predator, they hired to entertain the very same people who would become his victim.

50. Through its employees, Merriott International Inc., as owner of Westin Hotel Gaslamp Quarter, failed to provide security measures to after-hour guests of Mr. Simmons to ensure their safety. Additionally, Merriott employees flatly denied Ms. Lefridge's cousin access to Mr. Simmons' suite despite knowing that she had just left to retrieve a jacket and notwithstanding being placed on notice of the imminent danger faced by Ms. Lefridge from Mr. Simmons. Moreover, despite being placed on notice, Merriott's employees failed to send an attendant up to Mr. Simmons' suite to investigate the claims presented by the cousin and despite knowing that Mr. Simmons was occupying the suite and was known to hold all night parties where visitors, mostly women, exiting the suite were visibly observed as being under the influence.

///

## DEFENDENTS COLLECTIVELY INJURED MS. LEFRIDGE

51. As a direct result of the sexual harassment and abuse of Plaintiff by Defendants, Plaintiff has had difficulty in meaningfully interacting with others, including her husband. She has been limited in her ability to meaningfully interact with others due to the trauma attendant to the sexual assault upon her by someone she held with utmost esteem who literally saved her from the depths of depression commonly experienced by cancer patients.

52. Ms. Lefridge's inability to interact creates conflict with her values of trust and confidence in others, and has caused her substantial emotional distress, anxiety, nervousness and fear. As a direct result of the sexual abuse and molestation perpetrated by Defendants, Plaintiff has suffered extensive harm, including but not limited to serious trust issues, significant psychological and emotional trauma, symptoms of depression and anxiety, ongoing nervousness, and the development of a specific trigger resulting in an inability to travel by air for both professional and personal reasons.

53. As a direct and proximate result of Defendants' tortuous acts, omissions, wrongful conduct and breaches of their respective duties, Plaintiff's employment and professional development has been adversely affected. Plaintiff has lost wages and will continue to lose wages in an amount to be determined at trial. Plaintiff has suffered substantial economic injury, all to Plaintiff's general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

54. As a further direct and proximate result of Defendants' wrongful actions, as herein alleged, Plaintiff has been hurt in her health, strength and activity. Plaintiff has sustained permanent and continuing injury to her nervous system and person, which has caused and continues to cause great mental, physical and nervous pain, suffering, fright, upset, grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

55. In subjecting Ms. Lefridge to the wrongful conduct herein described, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California Civil Code § 3294. Plaintiff is informed, and on that basis alleges, that specifically, the Defendants acted in concert, and under the authority created by

Case 3:26-cv-00061-BTM-BLM    Document 1-2    Filed 01/05/26    PageID.20    Page 12 of 18

celebrity status, with reckless disregard for the concern of vulnerable female admirers patronizing the celebrity, Mr. Simmons.

56. The Defendants acted intentionally in creating an environment that enabled sexual molesters, put vulnerable persons at-risk of harm, ignored clear warning signs and their duties to report sexual abusers and molesters in their ranks, to maintain a façade of normalcy, in order to maintain their employ and provide further financial growth of the Defendants. Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiff is therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants Mr. Simmons, Dee and Does 1 through 100.

## FIRST CAUSE OF ACTION

## <u>SEXUAL BATTERY (Civil Code Section 1708.5)</u>

(Against Defendant BOBBY RAY SIMMONS, JR (aka B.O.B.))

57. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully below.

58. In doing the acts described above, Mr. Simmons acted with the intent to make an offensive contact with Ms. Ledridge.

59. Mr. Simmons did, in fact, bring himself into offensive, unwelcome and nonconsensual contact with Plaintiff as described above. At all relevant times, Plaintiff found this contact to be offensive to her person and dignity.

60. As described above, Mr. Simmons subjected Ms. Lefridge to unconsented and intentional invasions of her right to be free from offensive and harmful physical contact. As described above, Mr. Simmons subjected Ms. Lefridge to unconsented and intentional invasions of her right to be free from offensive and harmful physical contact.

61. As a direct and proximate result of Mr. Simmons' actions, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, and she will incur medical expenses for treatment by psychotherapists and other health professionals,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

11

medical doctors and for other incidental expenses. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

62. Mr. Simmons' conduct was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. Because Mr. Simmons exercised a unique position of trust and admiration as a result of celebrity status, he held a position of authority and influence. He abused and betrayed this relationship of trust and confidence. Ms. Lefridge is entitled to punitive damages from Mr. Simmons in amounts to be determined at trial.

## SECOND CAUSE OF ACTION

## BATTERY

(Against Defendant BOBBY RAY SIMMONS, JR (aka B.O.B.))

63. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully below.

64. In doing the acts described above, Mr. Simmons made physical contact with Ms. Lefridge with the intent to harm or offend her.

65. As described above, Mr. Simmons subjected Ms. Lefridge to unconsented and intentional violations of her interest in freedom from intentional, unlawful, harmful, and offensive physical contact.

66. A reasonable person in Plaintiff's position would have been offended by the physical touching to which Mr. Simmons subjected her.

67. As a direct and proximate result of Mr. Simmons' actions, Plaintiff was harmed.

68. Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish and emotional distress, and she will incur medical expenses for treatment by psychotherapists, medical doctors and other health professionals and for other incidental expenses. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

69. Mr. Simmons' conduct was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. Because Mr. Simmons held a position of authority and celebrity, he abused and betrayed this relationship of trust and confidence, Ms. Lefridge is entitled to punitive damages from Mr. Simmons in amounts to be determined at trial.

## THIRD CAUSE OF ACTION

### SEXUAL ASSAULT

(Against Defendant BOBBY RAY SIMMONS, JR (aka B.O.B.))

70. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully below.

71. Mr. Simmons committed an overt act of sexual abuse, sexual assault and sexual molestation against Ms. Lefridge. The overt acts consisted of groping and fondling the Plaintiff's vagina and breasts and suckling/kissing Ms. Lefridge's breasts putting her in imminent apprehension of continued offensive contact.

72. In Mr. Simmons doing this overt act, he intended to inflict a harmful or offensive contact against Ms. Lefridge and intended to cause her to fear such contact. Mr. Simmons knew that the consequence of an offensive contact was certain to result, as Mr. Simmons' sexual abuse was nevertheless intentionally inflicted.

73. Mr. Simmons' actions placed Ms. Lefridge in apprehension of an immediate harmful or offensive contact, and she believed Mr. Simmons had the ability to make harmful or offensive contact with Plaintiff's person without concern for Ms. Lefridge.

74. Plaintiff did not consent to Mr. Simmons' harmful or offensive contact with her person, or to Mr. Simmons' conduct putting her in imminent apprehension of such contact.

75. In doing the things herein alleged, Mr. Simmons violated Plaintiff's right under California Civil Code §43 of protection from bodily restraint or harm, and from personal insult. In doing the things herein alleged, Mr. Simmons violated his duty, pursuant to California Civil Code §1708, to abstain from injuring the person of Plaintiff or infringing upon her rights.

76. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning

capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

77. Mr. Simmons' sexual assault is a substantial factor in bringing about these harms to Ms. Lefridge.

78. Plaintiff is informed and based thereon alleges that the conduct of Defendant Mr. Simmons was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety Ms. Lefridge, and were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil Code* section 3294, entitling Plaintiff to punitive damages against Defendant Mr. Simmons in an amount appropriate to punish and set an example of Defendants.

## FOURTH CAUSE OF ACTION
## CIVIL CODE § 52.1 (BANE CIVIL RIGHTS ACT)

(Against Defendants BOBBY RAY SIMMONS, JR (aka B.O.B.), California Beer Festival, LLC dba CBF Productions, Marriott International, Inc. DEE and DOE #1)

79. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully below.

80. Civil Code Section 52.1, the Bane Civil Rights Act, establishes the liability of "a person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."

81. Plaintiff has a right to attend a public paid event free from sexual harassment based on gender under the laws and Constitution of the State of California.

82. Defendants' actions, breaches of duty and omissions set forth herein, through the use of threats, intimidation and/or coercion, interfered with and/or attempted to interfere with Plaintiff's rights to be free of sexual harassment and battery based on gender.

83. As a direct and proximate result of these acts, breaches of duty, omissions and ratifications, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish

and emotional distress, and she will incur medical expenses for treatment by psychotherapists, medical doctors and other health professionals and for other incidental expenses. Ms. Lefridge is thereby entitled to general and compensatory damages in amounts to be proven at trial.

84. Defendants' conduct was malicious and oppressive, and done with a conscious disregard of Plaintiffs' rights. Plaintiffs are entitled to punitive damages from all Defendants in an amount to be determined at trial. Plaintiffs are also entitled to statutory damages as provided by Civil Code Section 52.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendants BOBBY RAY SIMMONS, JR (aka B.O.B.), California Beer Festival, LLC dba CBF Productions, Marriott International, Inc. DEE and DOE #1)

85. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully below.

86. As alleged above, Defendants Mr. Simmons, DEE and DOE #1 engaged in extreme and outrageous conduct, including but not limited to intentionally and/or recklessly identifying Ms. Lefridge as a potential subject to satisfy Mr. Simmons' sexual desires and inviting her to join in after hour celebrations on the pretext of having an exciting evening filled with fun and dance with her musical idol when in reality, she was being set up by Dee as prey for Mr. Simmons' intended sexual exploits.

87. Additionally, as alleged above, Defendant CBF engaged in extreme and outrageous conduct, including but not limited to intentionally and/or recklessly failing to warn Ms. Lefridge, an invited paying guest onto property it managed and controlled, of a potential dangerous condition, when they knew or should have known of Mr. Simmons' pattern and practice of inviting unsuspecting females to join a twerking competition while performing at the festival they produced as a ruse to lure the females into his controlled space where he would offer drugs to incapacitate them and ultimately sexually assault them.

88. Likewise, Merriott's employees, engaged in extreme and outrageous conduct, including but not limited to intentionally and/or recklessly failing to institute safety measures for persons, especially

woman, entering the Merriott property for late night parties and gatherings where their personal safety was likely to be compromised by virtue of the facts and circumstances of the particular event. Additionally, Merriott's employees, engaged in extreme and outrageous conduct by refusing to allow Ms. Lefridge's cousin reentry to the upstairs suite despite being advised of the dangers Ms. Lefridge was facing from a guest of the hotel. Additionally, Merriott employees failed to investigate and assess whether Ms. Lefridge was safe and free from physical danger.

89. As a direct and legal result of Defendants' willful, wanton, intentional, outrageous, and malicious conduct, Plaintiff suffered severe and extreme mental and emotional distress, the exact nature and extent of which is not presently known to her. Plaintiff does not at this time know the exact duration or permanence of said injuries but is informed and believes, and on that basis alleges, that some of the injuries are reasonably certain to be permanent in character.

90. As a result of Defendants' actions, and each of them, Plaintiff has been directly and proximately caused to suffer damages as alleged herein.

91. Defendants' actions were willful, intentional, malicious, oppressive, and despicable, and Defendants acted with willful and conscious disregard for Plaintiff's rights. Plaintiff is therefore also entitled to punitive and/or exemplary damages in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against Defendants BOBBY RAY SIMMONS, JR (aka B.O.B.), California Beer Festival, LLC dba CBF Productions, Marriott International, Inc. DEE and DOE #1)

92. Plaintiff repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully below.

93. As herein alleged, Defendants acted negligently. Defendants owed a duty of reasonable care to Plaintiff in their actions and conduct towards her. It was foreseeable and probable that Plaintiff would suffer severe emotional distress as a result of Defendants' collective negligent conduct.

94. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer severe emotional distress.

95. Defendants' conduct was a substantial and proximate factor in causing Plaintiff severe emotional distress.

96. The actions alleged herein were done with malice, fraud, and oppression, and in reckless disregard of Plaintiff's rights.

97. As a result of Defendants' conduct, Plaintiff has incurred and will continue to incur damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following damages and relief:

(1)     For general damages according to proof and in accordance with California *Code of Civil Procedure* section 425.10;

(2)     For special damages according to proof and in accordance with California *Code of Civil Procedure* section 425.10;

(3)     For punitive damages in an amount necessary to punish and/or set an example of said Defendants;

(4)     For costs of suit incurred herein;

(5)     Award reasonable attorney fees and costs and expert fees and costs as allowed by law and as set forth under The Bane Act (California Civil Code § 52.1);

(6)     Award payment of pre-judgement interest on monetary damages;

(7)     Award extraordinary, equitable, and/or injunctive relief as permitted by law, equity, and the statutes alleged herein; and

(8)     Award other such other relief as this Court deems just and proper.

Dated: November 7, 2025

By: *Forrest R. Miller*
Forrest R. Miller, Esq.
Attorney for TAYLOR M. LEFRIDGE